# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENNIS WILSON, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>LSB INDUSTRIES, INC., BARRY H. GOLSEN, MARK T. BEHRMAN, TONY M. SHELBY, and HAROLD L. RIEKER, JR.<br><br>                              Defendants. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dennis Wilson ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by LSB Industries, Inc. ("LSB" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by LSB; and (c) review of other publicly available information concerning LSB.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of purchasers of LSB securities between May 8, 2015 and August 7, 2015, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      LSB is a manufacturing and marketing company.  The Company's principal business activities consist of the manufacture and sale of chemical products for the agricultural, mining and industrial markets; and, the manufacture and sale of commercial and residential climate control products, such as water source and geothermal heat pumps, hydronic fan coils, modular geothermal and other chillers and large custom air handlers.

3.      On July 14, 2015, the Company issued a press release entitled, "LSB Industries, Inc. Updates Status of El Dorado Facility Expansion."  Therein, the Company, disclosed that LSB's El Dorado factory expansion project would run over budget, in relevant part, stating:

> The 375,000 ton per year ammonia plant remains on schedule to be completed and operational in the first quarter of 2016. The Company's current cost estimate for the EDC expansion is now in the range of $560 million to $575 million, up from the previous estimate of $495 million to $520 million.

***

"We are pleased to report that the timeline for completion of our El Dorado facility expansion remains intact, although we are disappointed that the total cost of the project is expected to exceed our initial cost estimates," stated Barry Golsen, LSB's President and Chief Executive Officer. "The safety, product quality, and operational reliability of the El Dorado facility are our primary areas of focus as we move forward toward the completion of the project. Even with the anticipated higher costs, we believe that the project economics remain compelling, with the new capacity expected to yield approximately $90 million of annual incremental EBITDA operating at full capacity."

4.      On this news the Company's share fell $1.55 per share, or 4%, to close on July 15, 2015 at $39.07 per share, on heavy volume.

5.      On August 7, 2015, the Company revealed that it intended to implement certain recommendations after the Strategic Committee of the LSB Board of Directors reviewed the Company's business strategy, corporate governance structure, related party transactions and other governance practices of the Company.  Additionally the Company announced that the total cost to complete the El Dorado Facility expansion would now be in the range of $660 million to $680, significantly higher that its previous estimates of $495 million to $520 million on May 8, 2015 and $560 million to $575 million on July 14, 2015.

6.      On this news, shares of LSB declined $12.09 per share, over 34%, to close on August 7, 2015, at $23.01 per share, on heavy volume.

7.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose, among others: (1) that the Company's costs related to the expansion of the El Dorado Facility would be significantly higher than reported; and, (2) that, as a result of the foregoing, the Company's statements about its business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).   Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.   Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased LSB common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant LSB is a Delaware corporation with its principal executive offices located at 16 South Pennsylvania Avenue, Oklahoma City, Oklahoma.

15.     Defendant Barry H. Golsen ("Golsen") was, at all relevant times, Chief Executive Officer ("CEO") and a director of the Company until September 1, 2015.

16.     Defendant Mark T. Behrman ("Behrman") was, at all relevant times, Chief Financial Officer ("CFO") of the Company since on or about June 25, 2015.

17.     Defendant Tony M. Shelby ("Shelby") was, at all relevant times, CFO of the Company until on or about June 25, 2015.

18.     Defendant Harold L. Rieker, Jr. ("Rieker") was, at all relevant times Vice President, Principal Accounting Officer and Corporate Controller of the Company.

19.     Defendants Golsen, Behrman, Shelby and Rieker are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the content of LSB's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     LSB is a manufacturing and marketing company.  The Company's principal business activities consist of the manufacture and sale of chemical products for the agricultural, mining and industrial markets; and, the manufacture and sale of commercial and residential climate control products, such as water source and geothermal heat pumps, hydronic fan coils, modular geothermal and other chillers and large custom air handlers.

### Materially False and Misleading Statements Issued During the Class Period

21.     The Class Period begins on May 8, 2015.  On this day, the Company issued a press release entitled, "LSB Industries, Inc. Reports Improved Adjusted Operating Results for the 2015 First Quarter–Provides Chemical Business Product Volume Guidance for 2015 Second Quarter."  Therein, the Company, in relevant part, stated:

> LSB Industries, Inc. ("LSB") (NYSE:LXU) today announced results for the first quarter ended March 31, 2015.
>
> **Financial Highlights of First Quarter 2015 Compared to First Quarter 2014**
>
> - Net sales increased 8.6% to $193.9 million compared to $178.5 million.
> - Operating income was $14.2 million compared to operating income of $25.9 million. Excluding insurance recoveries in the prior year period, first quarter 2015 operating income increased $16.3 million over an adjusted operating loss of $2.1 million.
> - EBITDA was $23.6 million compared to $34.7 million. Excluding insurance recoveries in the prior year period, first quarter 2015 EBITDA increased $16.9 million over adjusted EBITDA of $6.7 million.
> - Net income applicable to common shareholders was $6.3 million, or $0.28 per diluted share compared to net income applicable to common shareholders of $11.3 million or $0.49 per diluted share. Excluding insurance recoveries in the prior year period, 2015 net income and earnings per share increased $16.3 million and $0.54 per diluted share, respectively, from an adjusted net loss of $5.9 million, or $0.26 per diluted share.

"Our first quarter results reflect the progress we've made in strengthening our operations, particularly in our Chemical Business," stated Barry Golsen, LSB's President and CEO. "Chemical sales grew more than 10% compared to the 2014 first quarter, driven by greater on-stream rates at our facilities, particularly at our Pryor Facility, where the reliability initiatives we've been implementing over the past 18 months are increasingly translating into more consistent production levels. Chemical Business results also benefitted from higher selling prices while profitability was aided by lower natural gas costs. Partially offsetting these tailwinds was the operating loss at our El Dorado facility resulting from its use of high cost ammonia as its primary feedstock, as compared to the cost effective natural gas used by our Pryor and Cherokee Facilities to make their own ammonia. *We expect this cost disadvantage to persist until our expansion projects at El Dorado, which remain on time and on budget, are completed. Once the ammonia plant is up and running in the first quarter of 2016, we expect the economics of this facility to greatly improve, resulting in significant incremental operating profit.*"

"We expect strong nitrogen fertilizer applications during the second quarter, as excessive rain and cooler temperatures delayed applications in the first quarter. Looking out over the balance of 2015, recent seasons of record corn corps have resulted in historically high stock-to-use ratios, which is expected to prompt a reduction in corn acres planted for the year. With fewer acres, however, we believe farmers will likely attempt to drive better yields through increased usage of nitrogen fertilizers. As such, our current view is that agricultural market fundamentals for our products will remain favorable for the foreseeable future."

"With respect to our mining related products, the U.S. Energy Information Administration is forecasting a 7% decline in coal production for 2015. This combined with the expiration of our agreement with Orica, which ended in early April, is likely to result in lower sales and profits related to industrial grade AN for the current year. *To date, we have replaced approximately 70% of the AN volume that had formerly been committed to Orica with new customer commitments, however, these new agreements will not go into full effect until 2016 when our El Dorado Facility is able to produce its own ammonia and our product is cost competitive.* The industrial markets we serve should continue to benefit from the improving economy and low natural gas prices. Overall, we continue to anticipate sufficient demand in 2015 to absorb the higher production levels we expect to achieve as a result of continued improvement in the on-stream rates of our chemical facilities."

Mr. Golsen continued, "First quarter sales and bookings for our Climate Control Business grew 8% and 5%, respectively compared to the prior year period, despite the previously disclosed termination of our agreement with Carrier for heat pumps. Excluding Carrier contracts from the first quarter of 2014, sales and bookings increased 20% and 18%, respectively, reflecting stronger demand for our large custom air handlers and hydronic fan coils for the commercial market.

We expect to continue to capitalize on the strengthening demand environment which, given the operating leverage inherent in our Climate Control Business, should lead to margin expansion. We anticipate that ongoing progress with our operational excellence initiatives will serve to further enhance our profitability improvement."

**Chemical Business First Quarter 2015 Compared to First Quarter 2014:**

| | Three Months Ended March 31, | | | | |
|---|---|---|---|---|---|
| | 2015 | | 2014 | | Change |
| | *(In millions)* | | | | |
| Net sales | $ | 126.8 | $ | 115.2 | $ | 11.6 |
| Operating income | $ | 16.7 | $ | 28.8 | $ | (12.1) |
| Segment EBITDA | $ | 24.5 | $ | 36.3 | $ | (11.8) |

Comparison of 2015 to 2014 periods:

- Net sales increased due to higher agricultural product volumes, resulting largely from the Pryor and Cherokee facilities increased on-stream rates and associated production, along with higher selling prices for industrial acids and mining products relating to higher ammonia prices passed through to customers, pursuant to contractual agreements, partially offset by lower volumes of industrial and mining products at our Baytown and Cherokee facilities.

- Operating income and EBITDA, on a reported basis, declined primarily as a result of $28.0 million of insurance recoveries recognized in the 2014 first quarter. Excluding this item, adjusted operating income and EBITDA were $0.8 million and $8.3 million, respectively, in the first quarter of 2014, representing a year-over-year improvement in the 2015 first quarter of $15.9 million and $16.2 million, respectively. The profit improvement in 2015 reflects the factors that drove sales improvement, combined with greater overhead absorption from the increased sales.

- The El Dorado Facility produces agricultural grade AN, nitric acid and industrial grade AN from purchased ammonia, which is currently at a cost disadvantage compared to products produced from natural gas. During the first quarter of 2015, the spread difference per ton between the ammonia purchased by the El Dorado Facility as compared to the cost had the facility been able to produce ammonia using natural gas was approximately $290 per ton. This cost disadvantage resulted in an operating loss for the facility during the period of approximately $4 million.

\*       \*       \*

CLASS ACTION COMPLAINT

7

Mr. Golsen concluded, "The first quarter of 2015, while still far from what we know our Company is capable of achieving, represents a positive step towards delivering sustainable profitable revenue growth in both of our businesses. We remain confident in our prospects for continued performance improvement for the balance of 2015 and a material expansion of profitability beginning in 2016, when our new capacity at El Dorado is up and running. We believe that the strategic improvements we are making to bolster returns in both our Chemical and Climate Control businesses will allow us to capitalize on improving market conditions and drive enhanced value for all of our shareholders."

[Emphasis added.]

22.     On May 8, 2015, the Company filed its Quarterly Report with the SEC on Form 10-Q for the 2015 fiscal first quarter.  The Company's Form 10-Q was signed by Defendant Behrman and Rieker, and reaffirmed the Company's statements previously announced that day.

23.     The statements contained in ¶¶19-20 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company's costs related to the expansion of the El Dorado Facility would be significantly higher than reported; and, (2) and that, as a result of the foregoing, the Company's statements about its business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

24.     On July 14, 2015, the Company issued a press release entitled, "LSB Industries, Inc. Updates Status of El Dorado Facility Expansion."  Therein, the Company, in relevant part, stated:

**Project Remains on Schedule; Total Construction Cost Estimate Revised Upward**
**Company Continues to Expect Facility will Generate Approximately $90 Million of Annual Incremental EBITDA**

LSB Industries, Inc. (NYSE:LXU) ("LSB" or "the Company"), a producer of chemical products for the agricultural, mining and industrial markets and a leading manufacturer of commercial and residential climate control products, today provided an update on the status of the expansion project at its El Dorado, Arkansas facility ("EDC expansion"). The new nitric acid plant and concentrator are on schedule to be completed and operational by the end of the third quarter of

2015. *The 375,000 ton per year ammonia plant remains on schedule to be completed and operational in the first quarter of 2016. The Company's current cost estimate for the EDC expansion is now in the range of $560 million to $575 million, up from the previous estimate of $495 million to $520 million. Based on management's current project cost estimates and forecast for operating cash flow, at this time LSB does not expect to require additional financing to complete the EDC expansion other than the previously announced financings related to the installation of the cogeneration facility and the ammonia storage tank.*

The Company recently updated its cost estimate to complete the EDC expansion using refined estimates for specific quantities of construction materials and labor-hours based upon information provided by its engineering, procurement and construction contractor. Contributing to the increased cost estimate to complete the EDC expansion were productivity and quality issues with a subcontractor responsible for the installation of piping in the ammonia plant.

"We are pleased to report that the timeline for completion of our El Dorado facility expansion remains intact, although we are disappointed that the total cost of the project is expected to exceed our initial cost estimates," stated Barry Golsen, LSB's President and Chief Executive Officer. "The safety, product quality, and operational reliability of the El Dorado facility are our primary areas of focus as we move forward toward the completion of the project. Even with the anticipated higher costs, we believe that the project economics remain compelling, with the new capacity expected to yield approximately $90 million of annual incremental EBITDA operating at full capacity."

[Emphasis added.]

25.     On this news the Company's share fell $1.55 per share, or 4%, to close on July 15, 2015 at $39.07 per share, on heavy volume.

26.     The statements contained in ¶22 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company's costs related to the expansion of the El Dorado Facility would be significantly higher than reported; and, (2) that, as a result of the foregoing, the Company's statements about its business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

27.     On August 7, 2015, the Company issued a press release entitled, "LSB to Implement Strategic, Operational and Corporate Governance Enhancements."   Therein, the Company, in relevant part, stated:

> LSB Industries, Inc. (NYSE:LXU) ("LSB or the Company"), a manufacturer of chemical products for the agricultural, mining and industrial markets and a leading manufacturer of commercial and residential climate control products, today announced that the Strategic Committee of the LSB Board of Directors (the "Strategic Committee"), comprised of entirely independent directors, presented the Board of Directors with a report and certain recommendations on July 30, 2015 following an evaluation of the Company's business strategy, corporate governance structure, related party transactions and other governance practices of the Company.
>
> Lance Benham, Chairman of the Strategic Committee, said, "We believe the actions taken by the Board will significantly improve the Company's corporate governance structure, enhance the execution of the Company's strategic growth initiatives and ultimately drive improved shareholder value. We look forward to seeing the benefits of these initiatives and continuing to work with the management team as it lowers production costs, improves manufacturing efficiency and drives sales growth which, we believe, will lead to enhanced profitability."
>
> As a result of the Strategic Committee's report, the Company's Board of Directors has determined the following:
>
> **Business Strategy and Operations**
>
> The programs initiated by the LSB's management team several years ago, including the expansion of the El Dorado facility, plant reliability enhancements in the Chemical Business and the implementation of the operational excellence activities in the Climate Control business are progressing and are expected to improve the Company's business and operational performance. These programs were initiated to enhance shareholder value and provide the Company with strategic flexibility. In support of these objectives, the Board has taken the following actions:
>
> **Operations Oversight Committee**: LSB will establish an Operations Oversight Committee of the Board to foster more direct interaction between the members of the Board and senior management in management's execution of the Company's business strategy over the next 18 to 24 months. The committee will focus on

management's execution of near-term business objectives and advise management on preserving strategic optionality to enhance shareholder value.

The Committee will be comprised of Webster L. "Lance" Benham (Chairman), Louis S. Massimo, Andrew K. Mittag, and Lynn F. White, who collectively possess extensive operational, financial, and industry expertise relevant to LSB's two business segments.

**Performance Metrics**: LSB will implement key operating performance metrics related to the reliability of the Company's chemical plants and to LEAN initiatives that management has undertaken in the Climate Control business. This will provide the Board with better visibility on the effectiveness of these initiatives.

**Analysis of Margin Enhancement in Climate Control Business**: LSB will engage the services of an independent consultant to review the operations of the Climate Control business with a specific focus on driving higher margins. The purpose of this review is to assess the efficiency of all manufacturing processes and to identify opportunities for leveraging technology and incorporating industry best practices.

### Corporate Governance Structure

**Corporate Governance Guidelines**: A comprehensive review and update of LSB's Corporate Governance Guidelines and committee charters is in process by the Nominating and Governance Committee, with the assistance of outside counsel. Recommendations for governance enhancements will be brought to the Board for discussion at the October 2015 Board meeting.

**Further Strengthening the Management Team**: Over the past two years, the Company has made several key management hires to improve the performance of both the Climate Control and Chemical Businesses. To further that, the Board has directed management to undertake a review of the overall organizational structure of the Company and provide the Board with recommendations for further deepening the senior leadership team.

### Related Party Transactions

The Board directed that the Compensation Committee of the Board conduct the annual performance review for all members of the Golsen family, noting that the Compensation Committee already conducts a review for the CEO.

### Other Governance Practices Deemed Appropriate for Review

**Executive Compensation Structure**: The Company will revise its compensation structure by adopting a pay-for-performance incentive compensation plan that

will ensure that executive compensation is directly linked to both short-term company performance as well as long-term value creation for shareholders. The new compensation plan will include specific performance metrics for the Company's senior management team and stock ownership requirements for the senior management team and all directors. The revised compensation structure will be in place by the end of 2015 and will apply to 2016 executive compensation.

**Shareholder Rights Plan**: The Board has elected to review the current Shareholder Rights Plan that is in effect to determine whether that plan should stay in effect until its expiration in 2019, whether it should be terminated, or whether an alternative plan should be presented to the Board for implementation. The Board will conduct its review over the next several months and come to a determination at its October 2015 meeting.

Barry Golsen, LSB's President and CEO stated "We believe the strategic initiatives we have implemented over the last few years will improve operating performance and earnings growth and allow us to capitalize on the favorable market dynamics in both our Climate Control and Chemical businesses. We are pleased that the Strategic Committee has reaffirmed the value enhancing potential of our businesses and we believe that the initiatives and corporate governance enhancements recommended by the Strategic Committee will better position us to deliver value for our shareholders. We look forward to continuing to work closely with the Strategic Committee and Board of Directors as we implement these enhancements and execute on our strategy."

28.     On August 7, 2015, the Company issued another press release, entitled, "LSB Industries, Inc. Reports Operating Results for the 2015 Second Quarter." Therein, the Company, in relevant part, stated:

### Updates Status of El Dorado Facility Expansion Provides Chemical Business Product Volume Guidance for 2015 Third Quarter

LSB Industries, Inc. ("LSB") (NYSE:LXU) today announced results for the second quarter ended June 30, 2015.

**Financial Highlights of Second Quarter 2015 Compared to Second Quarter 2014**

- Net sales decreased 9.4% to $182.7 million compared to $201.7 million.
- Operating income was $2.6 million compared to operating income of $23.8 million.
- EBITDA was $13.0 million compared to $32.6 million.

- Net income applicable to common shareholders was $0.4 million, or $0.02 per diluted share, compared to net income applicable to common shareholders of $11.1 million, or $0.47 per diluted share.

"Our second quarter results were impacted by both internal and external factors," stated Barry Golsen, LSB's President and CEO. "Chemical Business sales declined primarily as a result of a 17 day unplanned outage at our Pryor Facility ammonia plant during May which was caused by the need to replace a failed heat exchanger and, to a lesser extent, a water main break in the industrial park where the facility is located. Additionally, the lower Chemical sales as compared to prior year second quarter reflects the previously discussed April 2015 expiration of our contract with Orica for low density ammonium nitrate. A final factor negatively affecting second quarter Chemical Business results was the impact of unfavorable weather in our agricultural markets, which shortened the spring fertilizer application season, reducing our volumes and depressing prices for ammonia, UAN and AN in the quarter."

Mr. Golsen continued, "Our Climate Control Business delivered solid growth in sales driven by demand for our hydronic fan coils, large custom air handlers and modular chillers. The outlook for commercial/institutional and residential construction appears strong and we have been focused on cultivating our customer relationships and new product development efforts to position our business to capitalize on these growth opportunities. Climate Control operating profit declined as compared to the prior year period due to lower sales of heat pumps, higher warranty expense and freight costs along with an increase in personnel related costs."

*     *     *

**El Dorado Facility Expansion Update**

During the first part of August 2015, the engineering, procurement and construction contractor and other consultants we have retained in connection with the El Dorado Expansion projects advised us they are now estimating that the total cost to complete the El Dorado Expansion projects will exceed what we previously projected, due, in part, to work performed by a previous subcontractor. *We have now been advised that the total cost to complete the El Dorado Expansion projects is estimated to be in the range of $660 million to $680 million ($437 million spent as of June 30, 2015 and $223 million to $243 million to be spent in the balance of 2015 with the possibility that a portion of these capital additions could occur during the first quarter of 2016).*

*It is expected that the new ammonia plant will be mechanically complete by the end of 2015 and should begin production early in the second quarter 2016. As it relates to the new nitric acid plant and concentrator, the concentrator went into*

CLASS ACTION COMPLAINT

production in June 2015 and the nitric acid plant is expected to be mechanically complete in September 2015, with production beginning mid-fourth quarter 2015. We expect to be able to fund the cash needs for our operations and our capital expenditures, including the El Dorado Expansion projects and our other planned discretionary capital projects, from cash on hand, internally generated cash flow, working capital, borrowings under our working capital revolver, and other financings. We are currently negotiating with third party lenders for the financing for certain discrete pieces of equipment in connection with the El Dorado Expansion projects. Additionally, the Indenture governing our Senior Secured Notes allows us to incur an additional $50 million in debt. We are also in discussions with other financing providers to provide additional capital, as needed, for the completion of the El Dorado Expansion projects. If for some reason we are unable to complete these financings or there is a shortfall in our internally generated cash flow, either of which would negatively affect our ability to fund all of the discretionary capital projects we had planned to complete or initiate during the balance of 2015 and 2016, we would be required to reduce, delay the start of, or terminate at least some of these capital projects.

**LSB to Implement Strategic and Corporate Governance Enhancements**

LSB also today announced in a separate press release that the Strategic Committee of the LSB Board of Directors, comprised of independent directors, presented the Board of Directors with a report and certain recommendations on July 30, 2015 following an evaluation of the Company's business strategy, corporate governance structure, related party transactions and other governance practices of the Company. LSB intends to implement the initiatives and corporate governance enhancements recommended by the Strategic Committee while continuing to execute on the Company's strategy to create sustained shareholder value by lowering production costs, improving manufacturing efficiency, driving sales growth and enhancing profitability.

[Emphasis added.]

29.     On August 7, 2015, LSB filed its Quarterly Report with the SEC on Form 10-Q for the 2015 fiscal second quarter.  The Company's Form 10-Q was signed by Defendant Behrman, and reaffirmed the Company's statements previously announced that day.

30.     On this news, shares of LSB declined $12.09 per share, over 34%, to close on August 7, 2015, at $23.01 per share, on heavy volume.

31.     On September 3, 2015, the Company issued a press release entitled, "LSB Industries Inc. Announces Leadership Transition."   Therein, the Company, in relevant part, stated:

> *Daniel D. Greenwell, Lead Independent Director, Appointed Interim Chief Executive Officer*
> *Barry H. Golsen Steps Down as President and CEO*
> *Board Initiates Search Process for Permanent President and CEO*
> *Provides Update on Pryor Facility and Estimated Third Quarter 2015 Sales Volumes of UAN*

LSB Industries, Inc. (NYSE:LXU) ("LSB or "the Company"), a manufacturer of chemical products for the agricultural, mining and industrial markets and a leading manufacturer of commercial and residential climate control products, today announced that Barry H. Golsen has stepped down as President and Chief Executive Officer of LSB, effective immediately. Mr. Golsen will remain a Director of the Company.

The LSB Board of Directors has appointed Daniel D. Greenwell, Lead Independent Director, to serve as Interim Chief Executive Officer. Mr. Greenwell has been a member of the LSB Board of Directors since 2014 and serves as Chairman of the Audit Committee and a member of the Strategic Committee of the Board.

"On behalf of the Company, I want to thank Barry for his leadership and many contributions to LSB as President and CEO," said Jack E. Golsen, Executive Chairman of the Board of Directors. "Barry has played an important role in the growth and success of the Company over the past 38 years. He has also been instrumental in developing the Company's strategic plan to lower production costs, improve manufacturing efficiency and drive sales growth in the Chemicals business, and to generate profitable growth in the Climate Control business. We look forward to continuing to benefit from his insight and industry expertise as a Board member. We are also pleased that Dan Greenwell, an experienced executive with over 20 years of industrial, financial and operational experience, will lead the Company as we continue to take steps to improve the Company's performance and drive enhanced shareholder value."

"Having worked closely with management as a member of the Strategic Committee of the Board, I am confident that LSB is on the right path to realize the benefits of the Company's strategic growth initiatives," said Mr. Greenwell. "I believe that the expansion of the El Dorado facility, the plant reliability enhancements in the Chemical Business and the implementation of the operational excellence initiatives in the Climate Control Business will spur significant operating performance improvement and earnings growth in the years

ahead. I look forward to working with the Operations Oversight Committee as we execute our business strategy. LSB has a strong foundation in place and we will continue to focus on increasing shareholder value under new leadership."

The Company noted that the Board of Directors will initiate a formal search process to identify a permanent President and CEO. The Board intends to retain an executive search firm to assist in the search.

As a result of his appointment as Interim Chief Executive Officer, Mr. Greenwell will no longer serve on the Audit Committee or as Lead Independent Director of the Board, although he will remain a Director of the Company. In addition, current Directors William F. Murdy and Richard W. Roedel have been elected as Lead Independent Director and Audit Committee Chairman, respectively, to replace Mr. Greenwell in those positions.

**Update on Pryor, Oklahoma Facility**

LSB also provided an update on the operational performance of its Pryor Oklahoma chemical facility ("Pryor Facility" or "Pryor"). As previously disclosed, the Pryor Facility underwent its annual planned turnaround to address routine maintenance issues on July 11, 2015 and concluded the turnaround on August 4, 2015. While in the process of restarting the ammonia plant, Pryor's automated monitoring systems detected several mechanical issues that prompted management to take the plant out of service. Certain components were removed from the facility, taken off-site for repair and were reinstalled, and the plant restarted on August 21, 2015.

Subsequent to the restart of the ammonia plant on August 21, 2015, Pryor was in production for four days. However, on August 25, 2015 a pipe connecting two primary components of the ammonia plant developed a crack, causing operations at Pryor to once again be suspended. There were no injuries or environmental impact as a result of the crack, and it appears that the damage is isolated to this one pipe. After inspection by a third party, it has been determined that the pipe repairs should be completed by September 18, 2015.

LSB estimates that the periods of downtime at Pryor in August and September, assuming the ammonia plant is operational by September 18, 2015, will reduce third quarter 2015 sales volumes of UAN and ammonia by a total of approximately 35,000 to 40,000 tons and 5,000 to 6,000 tons, respectively, while lowering operating income by a total of approximately $8.0 million to $8.5 million, which includes lost profit, unabsorbed overhead expenses and costs of repair. Each additional day of downtime at Pryor, beyond September 18, 2015, is estimated to result in a reduction of operating income of approximately $150,000 to $200,000.

"We are extremely disappointed by the unplanned downtime occurring at the Pryor Facility during the third quarter," stated Jack Golsen. "We have been making progress towards generating more consistent performance at Pryor. However, there is always the risk that facility will experience some unplanned downtime from time to time during the next 18 months as we continue to move forward with our plant reliability and safety initiatives, which include the installation of sensors that will allow for earlier identification of mechanical issues and enhance preventative maintenance, and the implementation of advanced automation systems that will enable faster and more refined control over plant process conditions."

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased LSB's securities between May 8, 2015 and August 7, 2015, inclusive (the "Class Period") and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, LSB's securities were actively traded on the New York Stock Exchange (the "NYSE").  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of LSB shares were traded publicly during the Class Period on the NYSE.  As of July 31, 2015, LSB had 22,793,202 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by LSB or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

36.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of LSB; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

37.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

38.     The market for LSB's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, LSB's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired LSB's securities relying upon the integrity of the market price of the Company's securities and market information relating to LSB, and have been damaged thereby.

39.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of LSB's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about LSB's business, operations, and prospects as alleged herein.

40.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about LSB's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.   Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

41.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

42.     During the Class Period, Plaintiff and the Class purchased LSB's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

43.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding LSB, his/her control over, and/or receipt and/or modification of LSB's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning LSB, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

44.     The market for LSB's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, LSB's securities traded at artificially inflated prices during the Class Period.  On June

18, 2015, the Company's stock closed at a Class Period high of $43.80 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of LSB's securities and market information relating to LSB, and have been damaged thereby.

45.     During the Class Period, the artificial inflation of LSB's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about LSB's business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of LSB and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

46.     At all relevant times, the market for LSB's securities was an efficient market for the following reasons, among others:

(a)     LSB stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, LSB filed periodic public reports with the SEC and/or the NYSE;

(c)     LSB regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the

national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     LSB was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

47.     As a result of the foregoing, the market for LSB's securities promptly digested current information regarding LSB from all publicly available sources and reflected such information in LSB's stock price. Under these circumstances, all purchasers of LSB's securities during the Class Period suffered similar injury through their purchase of LSB's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

48.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or

misleading, and/or the forward-looking statement was authorized or approved by an executive officer of LSB who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase LSB's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

51.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for LSB's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about LSB's financial well-being and prospects, as specified herein.

53.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of LSB's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about LSB and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them, including, among other things, that certain of the Company's subsidiaries or business units were engaged in improper business practices and misrepresented the financial results, performance, and value of the Company's business units and equity investments. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing LSB's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of LSB's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired LSB's securities during the Class Period at artificially high prices and were damaged thereby.

57.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that LSB was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their LSB securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

60.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.     The Individual Defendants acted as controlling persons of LSB within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were

provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, LSB and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  September 25, 2015                    **GLANCY PRONGAY & MURRAY LLP**

                                             By: _s/ Lesley F. Portnoy_
                                             Lesley F. Portnoy (LP-1941)
                                             122 East 42nd Street, Suite 2920
                                             New York, New York 10168
                                             Telephone: (212) 682-5340
                                             Facsimile: (212) 884-0988
                                             lportnoy@glancylaw.com

                                                     -and-

                                             **GLANCY PRONGAY & MURRAY LLP**
                                             Lionel Z. Glancy
                                             Robert V. Prongay
                                             Casey E. Sadler
                                             1925 Century Park East, Suite 2100
                                             Los Angeles, CA 90067
                                             Telephone:  (310) 201-9150
                                             Facsimile:   (310) 201-9160

                                             **LAW OFFICES OF HOWARD G. SMITH**
                                             Howard G. Smith
                                             3070 Bristol Pike, Suite 112
                                             Bensalem, PA 19020
                                             Telephone: (215) 638-4847
                                             Facsimile: (215) 638-4867

                                             _Attorneys for Plaintiff_

## SWORN CERTIFICATION OF PLAINTIFF

LSB Industries, Inc., **SECURITIES LITIGATION**

I, Dennis Wilson, certify:

1.  I have reviewed the complaint and authorized its filing.

2.  I did not purchase LSB Industries, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in LSB Industries, Inc., during the class period set forth in the Complaint are as follows:

    See Attached Transactions

5.  I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ___ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: 9-25-15

_____
(Please Sign Your Name Above)

**Dennis Wilson's Transactions in**
**LSB Industries, Inc (LXU)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 6/29/2015 | Bought | 4,000 | $41.7500 |
| 6/29/2015 | Bought | 999 | $41.5000 |
| 6/29/2015 | Bought | 1 | $41.5000 |
| 6/29/2015 | Bought | 1,000 | $41.0000 |
| 7/2/2015 | Bought | 300 | $40.5000 |
| 7/2/2015 | Bought | 200 | $40.5000 |